HAKE *v*. GROFF.

1. SPECIFIC PERFORMANCE—CONTRACTS—INTENT.
   In a suit by the lessee for the specific performance of an option to purchase certain coal yards and premises, the actual intention of the parties must appear with reasonable certainty.[1]

2. SAME—CONDITIONAL OPTION TO PURCHASE.
   Where, from a consideration of all of the circumstances and conditions under which the lease and option to purchase was made, it appears that the lessee was to have the first refusal to purchase at an agreed price only in case the lessors decided to sell, the suit for specific performance was properly dismissed.[2]

Appeal from superior court of Grand Rapids; Dunham (Major L.), J., presiding.    Submitted April 14, 1925.    (Docket No. 66.)    Decided October 1, 1925.

Bill by Albert Hake against Edward Groff and another for specific performance of an optional land contract.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*Jewell, Raymond & Face,* for plaintiff.

*Taggart & Kingston,* for defendants.

McDONALD, C. J.    This bill is filed for the specific performance of a so-called option to purchase the coal yards and premises belonging to the defendants in the city of Grand Rapids, Michigan.    On the 26th of April, 1919, the parties entered into a written lease containing the following provision, which the plaintiff

[1]Specific Performance, 36 Cyc. pp. 588, 590; [2]Landlord and Tenant, 35 C. J. § 183.

claims gives him an option to purchase the premises in question during the life of the lease:

"The first party also agrees to sell to the second party the said property for the sum of nine thousand dollars, and the second party does and has agreed to pay nine thousand dollars for the same during the life of this lease. In other words, the first party gives the first refusal to the second party to purchase same."

It is the claim of the defendants that at the time the lease was made they had not decided to sell the property, and that their only purpose in putting in the sale clause was to give the plaintiff the first opportunity to purchase in case they decided to sell, and that the lease in this respect, as construed by the plaintiff, is not in accordance with the actual agreement of the parties. In their cross-bill they ask that the lease may be reformed so as to conform to the intentions of the parties at the time it was executed. On the hearing the circuit judge construed the sale clause in the lease to mean that the defendants were not bound to sell the property to the plaintiff within the five-year term, but that if they decided to do so the plaintiff should have the first opportunity to make the purchase at a consideration of $9,000. A decree was entered dismissing the bill. From this decree the plaintiff has appealed.

The case involves the construction of the sale or refusal clause of the lease.

"The first party also agrees to sell to the second party the said property for the sum of nine thousand dollars, and the second party does and has agreed to pay nine thousand dollars for the same during the life of this lease. In other words, the first party gives the first refusal to the second party to purchase same."

The first sentence of this paragraph contains an unconditional and absolute agreement to buy and sell

at a definite time and price. The sentence following modifies the first and was intended to express the understanding of the parties that it was not to be an unconditional sale, but that the second party was to have only "the first refusal to purchase." The question is, What did they mean by the term "first refusal?" As the plaintiff construes it, "first refusal" means that he is to have the option to buy during the term of his lease. As the defendants understand it, the plaintiff is given the first opportunity to buy providing the defendants desire to sell.

Considered apart from the other provisions in the lease, this paragraph will bear the construction placed upon it by counsel for the plaintiff. A refusal is an option. The words are used interchangeably by text-book writers and in adjudicated cases. A provision in a lease giving the lessee the refusal of the premises for a definite period after the term has expired means that he has an option to renew the lease for that period. *Tracy* v. *Albany Exchange Co.,* 7 N. Y. 472 (57 Am. Dec. 538) ; *Hosford* v. *Carter,* 10 Abbott's Pr. (N. Y.) 452; *McAdoo* v*.* *Callum Bros. & Co.,* 86 N. C. 419; *C. Callahan Co.* v. *Michael,* 45 Ind. App. 215 (90 N. E. 642) ; *Stetler* v. *North Branch Transit Co.,* 258 Pa. 299 (101 Atl. 980).

"First privilege of buying" is also equivalent to a first option to buy. *Schroeder* v. *Gemeinder,* 10 Nev. . 355.

In the instant case the language "first refusal to purchase" gave the lessee the first option. This option he might exercise at any time during the period of his lease unless the lessor has an opportunity to sell to another at which time, upon notice of that fact, the lessee must elect whether he will purchase the property. But if no such notice is given he has the entire term in which to exercise his option, and if he does so the lessor is bound to sell. This is the

construction which should be given to the refusal
clause if considered detached from the other pro-
visions of the lease.    But there is involved here the
specific performance of the contract, and the actual
intention of the parties must appear with reasonable
certainty.    The court will decree a performance only
in accordance with the real agreement, which must
be determined from a consideration of the whole in-
strument, and not from a detached portion thereof.
The actual agreement ascertained from a considera-
tion of the whole lease must prevail, even though it
is not in harmony with the strict letter of the refusal
clause.    In *Burgener* v. *O'Halloran*, 181 N. Y. Supp.
235, it was said:

> "There are many cases in the books but none that
> I can find with the precise phraseology of this case;
> the decisions of the court, however, as I read them,
> are to the effect that, whatever ambiguity there may
> be in the words of the covenant, the intention of the
> parties absolutely must prevail, and this, even though
> the intention of the parties is in opposition to the strict
> letter of the contract, when such intention is clearly
> ascertained."

We think a consideration of the whole lease shows
a different agreement than that which the strict
language of the refusal clause imports.    On the hear-
ing of the case the circuit judge was of the opinion
that the contract was ambiguous, and he permitted
oral evidence to be received showing the actual agree-
ment of the parties.    In disposing of the issue we
will not consider that testimony but may properly
refer to the situation of the parties and all of the
circumstances and conditions under which the contract
was made.    When the lease was executed the defend-
ant was conducting a coal business on the premises.
Because of failing health he desired to go to California
and to lease the premises during his absence.    Should
he decide to return he wanted possession of the prop-

erty at the termination of the lease.    This is shown by
the circumstances and by a certain provision of the
lease to which we shall presently refer.    He desired to
leave his family in a home on the premises which they
should continue to occupy unless he decided to vacate.
Provision was made for this in the lease.    Attached
to the lease and made a part thereof is the following
provision which the plaintiff himself drafted:

> "Grand Rapids, Mich.,
> April 26, 1919.
>
> "Mr. E. Groff, party of the first part, and Albert
> Hake, party of the second part, both residents of
> Grand Rapids, Michigan.
>
> "The first party being the owner of the following
> office fixtures and yard tools, allows the second party
> to use same.    It being understood that the second
> party is to return or replace same should the first
> party decide to return after five years in accordance
> with the lease bearing the same date, or the second
> party will pay two hundred and fifty dollars to first
> party."

The words "should the first party decide to return
after five years in accordance with the lease" are in
the language of the plaintiff.    They show the under-
standing of the parties that the lessor might decide
to remain in California and that if he returned he
could repossess himself of the premises at the ex-
piration of the lessee's term.    This provision of the
lease should be given effect, if possible.    It would
be ineffective and meaningless if the plaintiff had an
unconditional option to purchase the premises.    Con-
sidering every provision of the lease in connection
with the circumstances and conditions under which
it was executed, we are of the opinion that the plain-
tiff's "first refusal" to purchase depended upon the de-
fendant's decision to sell in the event that he decided
to remain in California.    If he desired to sell the
plaintiff was to have the first opportunity to buy for
a consideration of $9,000.    We think that the circuit

judge reached the correct conclusion as to the actual agreement of the parties.

A decree will be entered in this court in accordance with this opinion.    The defendants will have costs.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.